**Harry Paul SCHNEIDER**

v.

**The STATE of Texas.**

**No. 06–96–00097–CR.**

Court of Appeals of Texas, Texarkana.

Submitted July 25, 1997.

Decided Aug. 14, 1997.

Discretionary Review Refused Oct. 29, 1997.

Anthony Osso, Virginia Keith Fewell, Houston, for Appellant.

Alan Curry, Asst. Dist. Atty., Houston, for State.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

Grant, Justice.

Harry Paul Schneider was convicted of a felony offense and sentenced to fifteen years' imprisonment after a jury found that he delivered by offering to sell one kilogram of crack cocaine to an undercover police officer, H.C. Riddle, in violation of Texas Controlled Substances Act,[1] Sec. 481.112.

In his first three points of error, Schneider contends that his conviction is void (1) because Section 481.112 is unconstitutionally vague where the prosecution is for delivery by offer to sell and the Act fails to define the term "offer"; (2) because Section 481.112 violates federal and state constitutional due process and equal protection provisions; and (3) because the current judicial interpretation of Section 481.112 that permits prosecution for delivery by offer to sell based on verbal conduct alone conflicts with Section 482.002.[2] In his final two points of error, Schneider asserts that the trial court should not have admitted audio tapes that were not properly authenticated despite Schneider's objections, and that he was denied effective assistance of counsel.

Based on information from a confidential informant, Gary Henson, that Schneider and Daniel Hernandez were interested in selling a kilogram of cocaine, Riddle had Henson arrange a meeting with Schneider and Hernandez to discuss a sales transaction. The first meeting took place on February 10, 1996 at a north Houston mall parking lot. Riddle and Henson arrived in Riddle's truck, while Schneider, Hernandez, and a man called Rex arrived in Schneider's car. Riddle wore a body mike and taped the conversation that day. After Hernandez briefly spoke with Henson outside the vehicles, Hernandez got into Riddle's truck and told the officer that he had a cocaine sample to give him, but suggested that they first move to a better location across the street. Once across the street, Hernandez again spoke with Henson outside the vehicles. Rex got out of Schneider's car, into Riddle's truck, gave Riddle a free sample of cocaine, and told Riddle that the remaining cocaine was not yet in Houston, but that when it was, he would contact Hernandez, who would in turn contact Riddle to set up another meeting. Riddle showed Rex $22,500 in cash that was to be used to buy the cocaine when it became available. Because Schneider stayed in his car throughout the duration of this meeting, there was no taped conversation involving him.

On February 13, Riddle was told to go to a Kmart store for their next meeting; however, Schneider and his party did not show.

On February 15, Riddle was again contacted and told to go to a local drug store, from which he would be taken to a nearby motel room. Riddle and Henson arrived in Riddle's truck and Schneider and Hernandez arrived in Schneider's car. Riddle was once again wearing a body mike, and the conversation was taped and later played for the jury. Hernandez again spoke briefly with Henson outside the vehicles. Hernandez then rode with Riddle, while Henson rode with Schneider, to the motel. During this fifteen-minute trip, Hernandez discussed the sale with Riddle. Once at the motel, all four men entered the motel room, where Riddle was told that a call would have to first be made before the cocaine would be delivered to the room. Hernandez then escorted Riddle to the truck to count the money. When

---

1. Tex. Health & Safety Code Ann. §§ 481.001–.205 (Vernon 1992 & Supp.1997).

2. Tex. Health & Safety Code Ann. § 482.002 (Vernon Supp.1997).

they returned to the room, Schneider said he needed to leave to make the call to their drug contact, and he left for several minutes. While Schneider was gone, Riddle supposedly left to buy drinks for the group, but actually left to update nearby officers. Upon Schneider's return, Schneider stated that their contact was going to drop the cocaine off at the motel parking lot, after which Hernandez and Schneider would complete the transaction with Riddle and give the money to the people who brought the cocaine. After waiting approximately thirty minutes, Schneider left again to call to see what was taking the contact so long. When he returned five minutes later, Schneider said that they were on their way. After another thirty-minute wait, Riddle said he was leaving but could be paged if the third party showed. They did not page him.

On February 27, Riddle received word that Schneider wanted to meet him at a convenience store in Tomball because he knew of someone there who wanted to supply the cocaine. At the unrecorded meeting, Schneider told Riddle that the other "kids" were "out of the way" so the transaction would only involve Schneider and Riddle. Riddle told Schneider that he would have to go to a nearby location to retrieve the money. After Riddle left, Tomball officers arrested Schneider.

■ In his first point of error, Schneider asserts that Section 481.112 is unconstitutionally vague because the word "offer" leaves one uncertain if that term means either a mere suggestion of an exchange (verbal conduct alone) or actual presentation of a controlled substance.

Section 481.112(a) prohibits delivery of a controlled substance listed in the Act's Penalty Group 1, which includes cocaine.[3] Section 481.002(8) defines "delivery" of a controlled substance as:

> ... to transfer, actually or constructively, to another a controlled substance, counterfeit substance, or drug paraphernalia, regardless of whether there is an agency relationship. The term includes offering to sell a controlled substance, counterfeit substance, or drug paraphernalia.

The Texas Court of Criminal Appeals has repeatedly held that a statute is not void for vagueness merely because its words or terms are not expressly defined.[4] However, the Court has held that a statute may be unconstitutionally vague when it "forbids or requires the doing of an act in terms so vague that men of common intelligence must guess as to its meaning and differ as to its application."[5]

In *Francis v. State*,[6] after an analysis of the appellant's words and deeds, the Court held that a man of common intelligence would understand the meaning of "offer to sell," and therefore, the phrase was not unconstitutionally vague.[7] In *Francis*, two undercover policemen, one of whom was wired with a body mike, met with a suspected drug dealer to purchase cocaine. The dealer told the officers that he did not have any cocaine with him, but knew where he could get some if the officers could take him to that location. As the three men approached the vehicle to leave, the dealer unexpectedly opened the door to the van, exposing the surveillance team. The dealer was arrested and charged with delivery of a controlled substance by an offer to sell, although no physical delivery transpired.

The *Francis* Court held that the phrase "offer to sell" in a penal provision should not be defined under the civil law of contracts.[8] The Court explained that when words in a

---

**3.** TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D). The provision in Section 481.112(a) reads as follows: "Except as authorized by this chapter, a person commits an offense if the person knowingly or intentionally manufactures, delivers, or possesses with intent to manufacture or deliver a controlled substance listed in Penalty Group 1."

**4.** *Francis v. State*, 890 S.W.2d 510, 514 (Tex. App.-Amarillo 1994, pet. ref'd) (citing *Engelking v. State*, 750 S.W.2d 213, 215 (Tex.Crim.App. 1988)); *Ahearn v. State*, 588 S.W.2d 327 (Tex.

Crim.App.1979); Passmore v. State, 544 S.W.2d 399 (Tex.Crim.App.1976).

**5.** *Francis*, 890 S.W.2d at 514.

**6.** 890 S.W.2d 510.

**7.** *Id.* at 514.

**8.** *Id.* at 512.

statute are not defined, we are to give them their plain meaning without construction of penal laws or laws on other subjects, unless otherwise expressly stated by statute.[9]

Schneider asserts that even when one applies the plain meaning of "offer," its meaning is still unclear because of its varied meanings found within the dictionary. However, because most words in the dictionary have multiple meanings, our task is to seek a definition that is logically applicable to the factual situation involved.

Further, Schneider contends that *Francis* is distinguishable because the issue before that court was whether the phrase "offer to sell" was unconstitutionally vague, not whether the term "offer" was unconstitutionally vague. Because both *Francis* and the present case involve a conviction for delivery of a controlled substance by an offer to sell, it is likely that the *Francis* Court would have also upheld the word "offer" within the phrase "offer to sell." For example, in its analysis, the *Francis* Court stated that "when delivery is by an *offer to sell,* no transfer of the controlled substance need even take place.... All that need be found is that an *offer* was made *by either words or deed* that would indicate appellant intended to sell a controlled substance."[10] Here, the Court's language implies that there is no real distinction between the phrase "offer to sell" and the word "offer." Because there is no great distinction, and because either words *or* deed can constitute an "offer," there remains no uncertainty whether "offer" means either a mere suggestion of an exchange (verbal conduct alone) or actual presentation of a controlled substance (deeds); it can mean either *or* both.

Schneider contends that any doubt as to whether an offense has been committed must be resolved in favor of the accused, citing *Engelking v. State.*[11] However, that case

dealt with the issue of whether the terms "adulterant" and "dilutant" in the Texas Controlled Substances Act were unconstitutionally vague because they provided for a criminal penalty for possession of a substance not set out in either the schedule of controlled substances or any penalty group,[12] which is not the situation in the present case. The *Engelking* Court found that the statutorily undefined terms were not unconstitutional because they had been previously defined by case law and their presence only constituted an offense if the primary controlled substance was proven to exist, which it did by the appellant's admitted presence of methamphetamine.[13]

Additionally, the Texas Court of Criminal Appeals has held that the word "offer" is not *unconstitutionally vague in certain criminal cases.*[14] In the prostitution case styled *McCarty v. State,*[15] the Court stated that "even if the outermost boundaries of the statute may be imprecise, any such uncertainty has little relevance where the defendants' conduct falls squarely within the 'hard core' of the statute's proscriptions."[16]

■ In the present case, Schneider's conduct falls squarely within Sections 481.002 and 481.112. On February 10, Schneider led Riddle to the parking lot across the street, where Rex gave Riddle the sample. On February 15, Schneider made the two calls to the people who were to bring the cocaine to the motel. On February 27, according to Riddle's testimony, Schneider arranged the final meeting with Riddle, Schneider told Riddle that he had somebody in Tomball who could supply the kilo, Schneider told Riddle that the transaction would only be between them, and Schneider waited for Riddle, expecting that Riddle would return with the money for the transaction.

9. *Id.*

10. *Id.* at 513 (emphasis added).

11. 750 S.W.2d 213.

12. *Id.* at 215.

13. *Id.*

14. *See Ozack v. State,* 646 S.W.2d 941, 942 (Tex. Crim.App.1983) (reaffirming *McCarty v. State,* 616 S.W.2d 194, 195–96 (Tex.Crim.App.1981), which held that "offer" is not unconstitutionally vague in prostitution statutory provision).

15. 616 S.W.2d 194.

16. *Id.* at 196.

Because the statutory provisions, Sections 481.002(8) and 481.112, clearly place men of reasonable intelligence on notice that they cannot promote an exchange of a controlled substance to another person for value either by words or deed, the word "offer" is not unconstitutionally vague. The first point of error is overruled.

■ In his second point of error, Schneider asserts that Section 481.112 violates federal and state due process and equal protection in cases where the prosecution is for delivery by offer to sell because, under that section, the punishment for a person who offers to sell a controlled substance, but "has nothing to sell," is more severe than the punishment provided under Section 482.002, which penalizes a person who offers to sell, and does sell, a simulated controlled substance.

Schneider asserts that the culpable conduct is identical under both statutes and the disparate sentences violate his right to due process. However, the culpable conduct is not identical. The culpable conduct penalized under Section 481.112 is the offering to sell a controlled substance, regardless of whether the controlled substance is sold, and therefore, the focus is on the transaction at the time that the offer is made. The culpable conduct penalized under Section 482.002 is the offering to sell a *simulated* controlled substance, and therefore, the focus is on the item sold. Because of the substance's simulated nature and lesser range of punishment, we can presume the legislature determined that this behavior constitutes a lesser harm to society than delivery of an actual controlled substance.

■ That Section 481.112 penalizes offenders more harshly than Section 482.002, even when the controlled substance is not sold, "does not detract from the defendant's notice of the punishment under both statutes.[17] So long as a criminal statute clearly defines the conduct prohibited and the pun-

ishment authorized, the notice requirements of the Due Process Clause are satisfied." [18]

To further support his constitutional claim, Schneider relies on *Rucker v. State*,[19] in which the Texas Court of Criminal Appeals determined that a statute violated equal protection when it applied a lesser penalty to "peddlers," who remain on a premise after being told to leave by the lawful occupants, than "any other person," when there was no reasonable basis for the disparate treatment. The conduct penalized in *Rucker* is the same: persons who are not lawful occupants who are asked to leave a premise by a possessor with superior property rights and do not. In applying the rule that a state law is not constitutionally repugnant so long as the unequal treatment of persons is based upon a reasonable and substantial classification of persons, the Court found that there was no reasonable and substantial classification of persons to justify the disparate treatment between salesmen and "others." [20] Despite Schneider's assertion, a reasonable or substantial basis for distinguishing punishments provided in Section 482.002 and Section 481.112 exists and is stated above: persons offering to sell a *simulated* controlled substance constitute a lesser harm to society than those offering to sell a controlled substance, and therefore, the punishments must vary.

With further regard to his equal protection claim, the Texas Court of Criminal Appeals has held that "it is incumbent upon a defendant to show that in its operation, a challenged statute is unconstitutional as to him in his situation; that it may be unconstitutional as to others is not sufficient." [21] Schneider was not charged under Section 482.002, because there was no evidence that the cocaine was simulated; he was *only* charged under Section 481.112. Schneider's right to equal protection of the laws is not violated merely because he is treated differently from another person who commits different, albeit similar, conduct charged under a different stat-

---

17. *See Ex parte Luster*, 846 S.W.2d 928, 930 (Tex.App.-Fort Worth 1993, pet. ref'd).

18. *Id.*

19. 170 Tex.Crim. 487, 342 S.W.2d 325 (1961).

20. *Id.* at 327.

21. *McFarland v. State*, 928 S.W.2d 482, 521 (Tex.Crim.App.1996).

ute.[22] Therefore, his equal protection claim fails. The second point of error is overruled.

■ In his third point of error, Schneider contends that the judicial interpretation of Section 481.112, which permits prosecution for delivery by offer to sell based on verbal conduct alone, places that statute in conflict with Section 482.002, which prohibits delivery of a simulated controlled substance where the offeror expressly represents the substance being offered is a controlled substance. Specifically, Schneider asserts that although courts have interpreted Section 481.112 to mean that no drugs need be present because words alone are sufficient to constitute "offer to sell," the conduct between the two sections is the same: offering to sell a controlled substance. Further, he argues that because the essential, distinguishing element between the two sections is the actual substance being offered, rather than the verbal conduct that is identical under both, the legislature must have intended that the physical substance be required to be present to determine which offense was committed.

In dealing with this issue, Schneider cites to, and disagrees with, the court's analysis in *Rodriguez v. State*,[23] which held that (1) Section 481.112 and Section 482.002 are *in pari materia* (on like subject matter), (2) the former is a general statute and the latter is a specific statute, and (3) the latter controls where a simulated substance is actually present. Schneider contends that although the statutes are *in pari materia*, before one statute controls the other, it is this Court's duty to attempt to harmonize and give effect to both statutes with the specific controlling the general only in the event of an *irreconcilable* conflict.

However, the *Rodriguez* court dealt with a different issue, namely when faced with the question of when a person is subject to pros-

ecution under *two* statutes, whether the statutes conflict, and if so, whether one more specifically applies to the prohibited conduct at issue.[24] Because Schneider was charged and convicted under Section 481.112 *only*, we need not look at the issue of which section controls. His conduct did not invoke a charge and conviction under Section 482.002 because the substance Schneider sought to deliver for Riddle was not a substance chemically different from cocaine. Additionally, the sample Riddle received during the first meeting, at which Schneider was in attendance, was tested and proven to be cocaine, not a simulated controlled substance. At all times, he was being charged with delivering cocaine by offer to sell, an offense that was complete when the offer was made.[25] The third point of error is overruled.

■ In his fourth point of error, Schneider asserts that State exhibit numbers 2 and 3, audio tapes of the conversations recorded on February 10 and 15, were not properly authenticated and should not have been admitted over his repeated objections. Specifically, Schneider asserts the tapes cannot be determined to be authentic because of numerous gaps in conversations, which Riddle neither acknowledged nor could explain.

Although Schneider concedes that courts have held that gaps in audio recordings do not defeat their admissibility, he distinguishes those cases from the present case because those gaps were minor, accidental, and explainable. In support of his assertion that these gaps render these tapes not authenticated, Schneider applies the *Edwards v. State*,[26] seven-step predicate test for the admission of a tape recording. However, Texas Rule of Criminal Evidence 901(a) supersedes the *Edwards* test and is the controlling authority concerning authentication.[27]

22. *See Smith v. State*, 898 S.W.2d 838, 847–48 & n. 14 (Tex.Crim.App.1995) (noting that there exists rational basis for differing sentencing provisions between capital and noncapital cases).

23. 879 S.W.2d 283 (Tex.App.-Houston [14th Dist.] 1994, pet. ref'd).

24. *Rodriguez*, 879 S.W.2d at 286.

25. *See Iniguez v. State*, 835 S.W.2d 167, 171 (Tex.App.Houston [1st Dist.] 1992, pet. ref'd); *Vivanco v. State*, 825 S.W.2d 187, 190–91 (Tex.App.-Houston [14th Dist.] 1992, pet. ref'd).

26. 551 S.W.2d 731. (Tex.Crim.App.1977).

27. *Leos v. State*, 883 S.W.2d 209, 211 (Tex.Crim.App.1994).

Rule 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."[28] The Rule illustrates that authentication can be shown by the testimony of a witness with knowledge.[29] In the present case, Riddle testified from personal knowledge that the tapes fairly and accurately depicted the conversations of February 10 and 15, which is sufficient support to show authenticity.[30]

▆ Schneider also asserts that the tapes were improperly admitted into evidence because no chain of custody was demonstrated after Riddle released the tape to the lab to be enhanced. However, courts have held that minor breaches in the chain of custody will not affect admissibility in the absence of affirmative evidence of tampering.[31] Breaks in the chain of custody go to the weight rather than the admissibility of evidence.[32] Schneider has not shown that Riddle tampered with the tape, much less to the extent that the tapes no longer fairly and accurately depicted the conversations of February 10 and 15. As long as the trial court believed that a reasonable juror could find the evidence had been authenticated or identified, the trial court should admit the evidence.[33] Because the trial court did not abuse its discretion in admitting the two exhibits into evidence, the fourth point of error is overruled.

▆ In his fifth point of error, Schneider contends that he was denied effective assistance of counsel because his counsel (1) failed to conduct a proper investigation and (2) failed to make a proper objection when Riddle testified to hearsay statements made in violation of Schneider's motion in limine. Specifically, Schneider complains of the following portion of Riddle's testimony:

I had received a call from an informant Mr. Schneider wanted to meet and had someone in Tomball that would supply the kilo of cocaine. I had obtained a warrant for him—take that back—I had received a telephone call from a sergeant with the Tomball PD who stated that he had an informant call him and say that Mr. Schneider had contacted him about supplying a kilo of cocaine.

▆ In presenting a claim of ineffective assistance of counsel, a defendant must show (1) that his counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different.[34] The reviewing court should judge counsel's conduct by the "totality of the representation," not by isolated acts.[35] Further, the failure to object to admissible evidence does not constitute ineffective assistance of counsel.[36]

Although Schneider admits his counsel filed numerous pretrial motions, Schneider faults his counsel for not requesting notice of uncharged extraneous conduct that was to be used against him. Had counsel requested this information, Schneider would not have suffered surprise at trial. Schneider further asserts that that portion of Riddle's testimony would not have been admitted had his counsel presented an objection based on a violation of his motion in limine and hearsay.

Schneider relies on *Hill v. State*[37] in his contention that it is reversible error to admit the hearsay statement of an informant that

28. Tex.R.Crim. Evid. 901(a).

29. Tex.R.Crim. Evid. 901(b)(1).

30. *See* Tex.R.Crim. Evid. 901(a).

31. *Pena v. State*, 864 S.W.2d 147, 151–52 (Tex. App.-Waco 1993, no pet.).

32. *Coleman v. State*, 833 S.W.2d 286, 289 (Tex. App.-Houston [14th Dist.] 1992, pet. ref'd).

33. *Id.* at 289.

34. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hathorn v. State*, 848 S.W.2d 101, 118 (Tex.Crim.App.1992).

35. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim.App.1990).

36. *McFarland v. State*, 845 S.W.2d 824, 845 & n. 17 (Tex.Crim.App.1992).

37. 817 S.W.2d 816 (Tex.App.-Eastland 1991, pet. ref'd).

the defendant was selling drugs because the police had been instructed not to mention that fact, especially when the defendant's intent to deliver was at the heart of the controversy. In reviewing the record, including the materials Schneider proffers in his motion to supplement the record, which includes testimony by State's counsel stating that he "believe[s] [the motion in limine] was agreed to," there was no evidence that the court ever made a ruling on the motion in limine.

Schneider also relies on *Hill* when he faults his counsel for not objecting to Riddle's statement on the basis of hearsay. In *Hill,* the trial court conducted a hearing to determine the admissibility of evidence of an informant. After hearing the officer's testimony, the court ruled that the officer could testify to receiving information, but not what that information was. Within minutes after the jury returned to the courtroom, the officer testified over counsel's continuous objections that a "reliable credible informant" stated that "Hill was dealing heroin." The appellate court reversed and remanded, holding that it was reversible error to admit hearsay statements of a confidential informant that went to the heart of the controversy, namely whether Hill possessed heroin with intent to deliver.[38]

■■■■ Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence *to prove the truth of the matter asserted.*" [39] Likewise, a statement that is not offered to prove the truth of the matter asserted is not hearsay.[40]

In the present case, Riddle's testimony was arguably admissible because courts have found similar statements admissible as not hearsay when they are made to establish the circumstances leading to the officer's approach of a defendant[41] or to show why an officer got an arrest warrant and searched

the defendant.[42] To illustrate, Riddle's testimony goes on to state:

Q Once that information was received, then you acted upon it?

A Yes, I did. I went to Tomball to the Stop 'N Go where I was directed and met Mr. Schneider there.

Arguably, Riddle's testimony stating that Schneider contacted an informant for the purpose of arranging a meeting to sell cocaine was offered to show the circumstances leading up to Riddle's meeting at the convenience store or to show why he obtained an arrest warrant for Schneider. Therefore, unlike the *Hill* court, we cannot conclude the admission of this evidence was hearsay.

Schneider asserts that because there was no physical evidence offered against him, Riddle's statement above was the single most devastating piece of evidence presented to negate his defense theory that he never intended to deliver the cocaine. However, Riddle also testified to Schneider's delivery in the following testimony:

Q What happened at that [Tomball] meeting?

A We discussed whether or not he was going to be able to get a kilo of cocaine this time, that this was the last time I was going to meet with him. He said he had somebody that could supply it, that he had gotten Mr. Hernandez and the other kids out of the way and it was just going to be he and I.

This testimony also supports the jury's decision and Schneider's conviction under Section 481.112. Therefore, Schneider has still not proven that, but for his counsel's failure to object to a cumulative statement on the basis of hearsay, he would have enjoyed a different result.

Because Schneider has not proven that the totality of his counsel's representation fell below an objective standard of reasonableness and that, but for any unprofessional

**38.** *Id.* at 817.

**39.** *Jones v. State,* 843 S.W.2d 487, 499 (Tex. Crim.App.1992).

**40.** *Oberg v. State,* 890 S.W.2d 539, 542 (Tex.App.-El Paso 1994, pet. ref'd).

**41.** Id.

**42.** *Jones,* 843 S.W.2d at 499.

error his counsel may have made, the result of the proceeding would have been different, the fifth point of error is overruled.

The judgment of the trial court is affirmed.