In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00096-CV


______________________________




JOE TOLER AND GINNY SUDELA, Appellants



V.



CARMAC TAYLOR, D.D.S., Appellee




 


On Appeal from the 10th Judicial District Court


Galveston County, Texas


Trial Court No. 98CV0553




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Joe Toler and Ginny Sudela, appellants, have filed a motion seeking to dismiss their
appeal. Pursuant to Tex. R. App. P. 42.1, the motion is granted.

 We dismiss the appeal.


 Donald R. Ross

 Justice


Date Submitted: October 16, 2001

Date Decided: October 16, 2001


Do Not Publish



">


Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Albert Alexander was convicted in the 76th Judicial District Court of Morris County of two
counts of delivery of a controlled substance (cocaine) in an amount less than one gram (count one)
and in an amount of one gram or more but less than four grams (count two). Alexander appeals
those convictions.

 On two occasions a week apart in the late summer of 2004, Alexander sold cocaine to a
"cooperating individual," Stephanie McCoy, who was "working off" her own hot check cases by
helping law enforcement gather information to prosecute Alexander. Alexander's points of error on
appeal allege that:

 1) the trial court erred when it denied Alexander's motion for a mistrial, following the State's
alleged comment on Alexander's failure to testify at punishment;


 2 ) the trial court erred when it denied Alexander's motion for a mistrial, after a State witness
violated the motion in limine by mentioning alleged extraneous offenses;


 3 ) the evidence is factually insufficient (as to the weight of cocaine) to support conviction
on count two; 


 4) the trial court erred in overruling the objection that the proper predicate was not laid for
admission of the crack cocaine from the count two sale; and


 5) the trial court erred in allowing testimony regarding Texas Department of Public Safety
(DPS) chemist Reuben Rendon's report, evidence which Alexander alleges was hearsay.


 After our review of the record and applicable law and having listened to oral arguments from
the parties, we affirm the judgment.

 Where appropriate, we present the applicable facts as we address each of Alexander's issues. 

 Relevant to all issues, on August 24, 2004, and on September 1, 2004, cooperating individual
McCoy purchased crack cocaine from Alexander on McReynolds Street in Daingerfield. The
investigating officer at whose behest McCoy was acting was Lance Cline; the DPS chemist who
testified at trial was Chance Cline (who, despite the similarity of names, is not a relative of Lance
Cline).

I. Comment on Failure to Testify

 Alexander complains that the trial court erred when it overruled Alexander's motion for a
mistrial, following a statement by the State which Alexander claimed was a comment on his right
not to testify. In the State's closing argument at the punishment phase of the trial, after
recommending to the jury that it assess a sentence of twenty years' incarceration (the maximum for
the second-degree felony for the one-to-four-gram charge), the State said:

 This is not a possession case. This is not a user case, and he's caught with a
little bit of marijuana or a little bit of crack in a pipe or a little bit of
methamphetamine or a couple of pills. This is a guy who made his living on the
streets of Daingerfield selling drugs. 


 You could drive up in open daylight, him not even know you, him come out
to your car, and buy $140.00 worth of cocaine just like that. You saw it for yourself. 


 He's expressed no remorse in this case. You've seen no remorse.


(Emphasis added.)

 Alexander interjected an objection that this argument was a comment regarding Alexander's
failure to testify; (1)
 the trial court instructed the jury to disregard the State's last comment. Alexander
then requested the trial court to declare a mistrial, a request which was denied. 

 The State's statement was improper because it referred to evidence (remorse) which could
only be supplied by the defendant. See Swallow v. State, 829 S.W.2d 223, 225 (Tex. Crim. App.
1992). "It is settled law that neither the trial judge nor the prosecution may comment on the
defendant's failure to testify, and that any such comment violates the Fifth Amendment privilege
against self-incrimination." Cruz v. State, No. PD-0404-05, 2007 Tex. Crim. App. LEXIS 689, at *3
(Tex. Crim. App. June 6, 2007) (citing Griffin v. California, 380 U.S. 609, 614 (1965); Bustamante
v. State, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001); see Tex. Code Crim. Proc. Ann. art. 38.08). 
Whether this comment by the State amounts to reversible error is another matter. When the trial
court sustains an objection to jury argument and instructs the jury to disregard but denies a
defendant's motion for a mistrial, the issue on appeal becomes whether the trial court abused its
discretion in denying the requested mistrial. Hawkins v. State, 135 S.W.3d 72, 76-77 (Tex. Crim.
App. 2004). As with other matters in which abuse of discretion is the issue, we will uphold the trial
court's ruling if it was within the "zone of reasonable disagreement." Wead v. State, 129 S.W.3d
126, 129 (Tex. Crim. App. 2004) (citing Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim.
App. 1990) (op. on reh'g)).

 A harm analysis is employed only when there is error, and ordinarily, error occurs
only when the trial court makes a mistake. Here, the trial court sustained the defense
objection and granted the requested instruction to disregard. The only adverse
ruling--and thus the only occasion for making a mistake--was the trial court's denial
of the motion for mistrial. Under those circumstances, the proper issue is whether
the refusal to grant the mistrial was an abuse of discretion. 

Hawkins, 135 S.W.3d at 76-77 (footnotes omitted). 

 The Hawkins court approved the balancing of three factors for this kind of situation: (1) the
severity of the misconduct (i.e., its prejudicial effect on the jury), (2) the curative measures which
were taken, and (3) the certainty of the punishment which would have been assessed absent the
misconduct (i.e., in this case, the likelihood of the same punishment being assessed if the statement
had not been made and the instruction to disregard had not been necessary). Id. at 77. (2) While
Hawkins involved statements made by the prosecutor regarding parole eligibility, in Archie v. State,
the Texas Court of Criminal Appeals used the same analysis where the prosecutor's statement
arguably referenced Archie's failure to testify ("You heard no evidence to the contrary as to . . . the
second victim. You heard no denial. That was just accepted."). Archie v. State, 221 S.W.3d 695
(Tex. Crim. App. 2007).

 A. Prejudice, severity of misconduct

 In Hawkins, the Texas Court of Criminal Appeals points out that even a violation of a
"mandatory statute" does not, by itself, necessarily warrant a reversal. Hawkins, 135 S.W.3d at 82
(citing Cain v. State, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997)). Violation of even those to
which reference is made as a "mandatory statute" "has no place in our current harmless error
scheme." Id. Accordingly, even if the State's argument in the instant case violated Article 38.08,
that error alone does not necessarily warrant reversal. Rather, the standard applied by the Texas
Court of Criminal Appeals seems to require a determination of whether the violation is an "extreme
[case] where the language complained of is manifestly improper, harmful and prejudicial," and
possibly where "some new and harmful fact [is] injected into the case." Id. at 81. The Texas Court
of Criminal Appeals goes on to say that, "We are not aware of any decision reversing a case solely
because the error involved a violation of a 'mandatory' statute without regard to whether the error had
any influence upon the jury's decision." Id. at 82. 

 In the instant case, the State's comment was brief and was not repeated; the brevity of the
offending statement and the fact that it was not repeated are factors noted by the Texas Court of
Criminal Appeals in Archie which mitigate against reversal. In light of recent Texas Court of
Criminal Appeals' cases addressing these situations, we cannot say that the State's comments about
Alexander's apparent lack of remorse was an "extreme [case] where the language complained of is
manifestly improper, harmful and prejudicial," nor was "some new and harmful fact injected into the
case." Id. at 81. 

 B. Curative Measures

 In Hawkins and Archie, the Texas Court of Criminal Appeals next looked to the curative
measures taken by the trial courts after the incidents (as in this case, instruction to the juries to
disregard). An instruction to disregard normally cures error, except in extreme cases where it
appears that the evidence is clearly calculated to inflame the minds of the jury and where the conduct
is of such a character as to suggest the impossibility of withdrawing the impression produced on the
jurors' minds. Livingston v. State, 739 S.W.2d 311 (Tex. Crim. App. 1987); Carter v. State, 614
S.W.2d 821 (Tex. Crim. App. [Panel Op.] 1981). When counsel asks for a particular instruction and
the trial court accedes to the request, that instruction will in most cases be considered effective to
cure the harm from an improper argument. Hawkins, 135 S.W.3d at 84. 

 Here, the trial court instructed the jury to disregard the State's statement immediately upon
Alexander's objection, an objection which followed on the heels of the utterance itself. As this
situation is very similar to that in Archie, we find that the trial court's instruction was sufficient to
ameliorate any potential harm from the State's argument. (3) 

 C. Certainty of Punishment Assessed

 With regard to the improper statement to the jury mentioned above, we now consider the
sentence received by Alexander. Here, it is true that Alexander received the maximum sentence for
each count (a two-year sentence for the state-jail felony and twenty years for the second-degree
felony). This can well be attributed to the other evidence regarding Alexander's history. Evidence
was adduced that Alexander was only twenty-five years old at the time of trial, but that he had
already amassed an extended "rap sheet." He had a juvenile adjudication for burglary; he had
previously entered a guilty plea to the state-jail felony offense of theft of a firearm; he had been
placed on community supervision for five years; and he was later again placed on community
supervision for a state-jail felony offense of delivery of a controlled substance, but his community
supervision had been revoked, resulting in his having been sentenced to incarceration. In addition
to his criminal history, the two drug sales happened within one week of each other and Alexander
was actively pursuing further illicit drug sales, handing out his business card to McCoy so she could
reach him easily for repeat business. In Archie, the court pointed out that while Archie, like
Alexander, received the maximum available sentence, the State provided evidence of several
previous convictions. In contrast, although most of Archie's convictions were for misdemeanors,
Alexander had three felony convictions (including one juvenile adjudication) in addition to the two
crimes for which he had just been convicted. Taking into account all of the evidence, we can see no
significant likelihood that Alexander would have received a different sentence if the comment had
never been made.

 After evaluating the situation during Alexander's trial under the framework established by
the Texas Court of Criminal Appeals in Archie and Hawkins, we hold that the trial court did not
abuse its discretion in denying Alexander's requested mistrial. 

 The first point of error is overruled. 

II. State's Witness Violates Motion in Limine by Disclosure of Extraneous Offenses

 Evidence from the State's witnesses made repeated reference to Alexander living in and
dealing drugs out of a residence at 421 McReynolds Street in Daingerfield, Texas. Both of the
transactions in which McCoy testified she bought crack cocaine from Alexander happened near this
house. During his cross-examination questions and also during his case-in-chief, Alexander
attempted to establish that he did not live at this address. In this effort, he attempted to show that
his driver's license listed an address in Hughes Springs as his residence address. Alexander's mother
testified as his only called witness; during her testimony, she related that he lived with her (at least
some of the time) and that the address on his driver's license was that of her home in Hughes
Springs. 

 Johnny Phillips, an investigator with the Ark-La-Tex Task Force, assisted the primary
investigator, Lance Cline, in working with McCoy on the controlled drug buy from Alexander on
August 24, 2004 (the date McCoy purchased a rock of crack cocaine from Alexander with $40.00
of Task Force funds). On cross-examination, Alexander's attorney asked Phillips whether Phillips
"believe[d] [Alexander's] address to be 421 McReynolds Street." Phillips replied in the affirmative. 
The following exchange then occurred: 

 Q If his driver's license indicates 2305 South 12th in Hughes Springs or
if there's testimony that that's where he lived most of the time, do you know whether
that's true or not?

 

 A Be false because I've dealt with Mr. Alexander for years, bought dope
from him from McReynolds Street on different occasions as well as other locations.

(Emphasis added.) Alexander's objection to the answer as being nonresponsive to the question was
sustained. Alexander then requested that the jury be instructed to disregard the witness's statement;
that request was granted, and the jury was thus instructed. Alexander then moved that a mistrial be
declared; that motion was denied. 

 Phillips's statement was clearly inadmissible. We find it especially troubling as it was made
by a member of law enforcement, and would appear to have been an intentional interjection of an
inadmissible statement. Further, Alexander had done all that procedure would permit to prevent
such an inadmissible statement by having requested and been granted a motion in limine to exclude
any reference to inadmissible extraneous offenses. By our reading of the record, Alexander
assiduously avoided opening any doors to such evidence by inadvertent questions which might allow
such a thing to occur. The response was clearly unsolicited and was wrongly volunteered, in spite
of the motion in limine. A question about whether a witness knows where the defendant lives would
certainly not be expected to elicit an answer indicating the defendant's alleged history for dealing in
narcotics beyond those instances on trial, especially where the testifying witness is a law enforcement
officer, presumably having been given training in testifying in court. In addition, Alexander's
indictment originally had four counts: the first two alleged the sales to McCoy, which were included
in the jury charge and upon which Alexander was ultimately convicted. The last two counts alleged
a third sale to McCoy and a fourth sale to a different person. Only the first two counts, though, were
read to the jury (the record is silent as to why the last two counts were not pursued). Because by this
point the State had obviously decided to limit itself to proving the allegations in counts one and two,
there was no reason for the officer to have made any mention of these extraneous offenses. 

 However, instructions to juries to disregard statements such as this have been found adequate
to cure error, even when witnesses have violated a motion in limine or referenced an extraneous
offense. "A prompt instruction to disregard will usually cure any prejudice resulting from improper
testimony regarding an extraneous offense, even if given in violation of a motion in limine." Austin
v. State, 222 S.W.3d 801 (Tex. App.--Houston [14th Dist.] 2007, pet. filed); Rogers v. State, 200
S.W.3d 233 (Tex. App.--Houston [14th Dist.] 2006, pet. ref'd); Martinez v. State, 844 S.W.2d 279,
284 (Tex. App.--San Antonio 1992, pet. ref'd) (extraneous offense in violation of motion in limine);
see also Whitaker v. State, 977 S.W.2d 595, 600 (Tex. Crim. App. 1998) (State's witness testified
to extraneous offenses by defendant; instruction to disregard held sufficient to cure any harm). 
While the officer's unsolicited statement is troubling, it was brief and isolated. It does not appear
so "clearly calculated to inflame the minds of the jury and is of such a character as to suggest the
impossibility of withdrawing the impression produced on their minds" that a proper instruction to
the jury would not cure it. See Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999); Gardner
v. State, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987). The trial court promptly instructed the jury
to disregard, in accord with Alexander's prompt request. 

 We find that the trial court did not abuse its discretion in denying Alexander's requested
mistrial, as the instruction to disregard was sufficient to cure any potential harm. 

 The second point of error is overruled. 

III. Factually Sufficient Evidence to Support Second-Degree Felony Conviction

 In his third point of error, Alexander complains the evidence is factually insufficient to
support a conviction for count two of the indictment, which alleged delivery of one gram or more
of cocaine but less than four grams. Count two involved the drug transaction of September 1, 2004. 
Alexander claims that, at most, the evidence supported a finding the drugs involved in that buy
weighed .95 grams, and therefore, he is at most guilty of a state-jail offense for count two. (4)

 For a factual sufficiency review, we look at all the evidence in a neutral light, and consider
whether the evidence is so weak that the jury's determination was clearly wrong and manifestly
unjust, or that a different result would have been appropriate. Watson v. State, 204 S.W.3d 404,
414-15, 417 (Tex. Crim. App. 2006). 

 After McCoy made the second drug buy, on September 1, she gave the drugs to Lance Cline. 
 Cline weighed them at his office on a set of digital scales; the cocaine showed to be three grams.
He agreed that these scales were not as accurate as the measuring devices at the DPS crime
laboratory, and these scales were not "calibrated . . . or anything." Some time in December 2004,
Rendon, at the time a DPS chemist, performed his chemical analysis and weighed the cocaine at 1.69
grams. Rendon subsequently transferred to a laboratory in Corpus Christi and received a promotion. 
Rendon's successor at the DPS laboratory, Chance Cline, retested the cocaine in February 2006; it
weighed .95 grams. Obviously, if the last measure were used, Alexander would have been guilty
only of a state-jail felony.

 Both Lance Cline and Chance Cline testified offering explanations for the change in weight. 
Lance Cline testified that when crack cocaine is manufactured, it contains significant amounts of
moisture, which increases its weight. Over time, the cocaine dries out and it takes the familiar rock
shape. Lance Cline explained that many things can affect this kind of weight change. He explained
that the quality or purity of the drug will affect whether any adulterants present in the tested drugs
attract water. Chance Cline testified that based on his training, education, and experience, the weight
obtained by Rendon would differ from that obtained when Chance Cline tested the drugs fourteen
months later. However, he also said that he believed the drugs would have weighed more than one
gram when Rendon tested the drugs in December 2004 (three months after the transaction). Chance
Cline also acknowledged that his analysis was done after Rendon had performed his analysis and had
used at least some portion of the drugs to do that analysis. 

 When evidence both supports and conflicts with the verdict, we must assume that the fact-finder resolved the conflict in favor of the verdict. Turro v. State, 867 S.W.2d 43, 47 (Tex. Crim.
App. 1993). Conflicts or inconsistencies in the evidence do not render the evidence factually
insufficient. Dornbusch v. State, 156 S.W.3d 859, 872 (Tex. App.--Corpus Christi 2005, pet. ref'd) 
The jury is the exclusive judge of the credibility of witnesses and of the weight to be given
testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence. 
Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).

 The only evidence that does not support a finding of a sufficient amount of cocaine for a
second-degree felony was Chance Cline's analysis, putting the weight at less than one gram. There
was, however, testimony offering an explanation for the different weights obtained by three different
witnesses. Examining all the evidence in a neutral light, we cannot say the evidence is so weak that
the jury's determination was clearly wrong and manifestly unjust. Nor can it be said that a different
result would have been appropriate. Watson, 204 S.W.3d at 414-15, 417. Accordingly, we hold the
evidence of the weight of the cocaine purchased in the charge alleged in count two is factually
sufficient to support the jury's verdict. We overrule Alexander's third point of error. 

IV. Admission of Evidence Over Alexander's Objection

 Alexander also complains that the State failed to establish the proper chain of custody for the
drugs involved in the September 1, 2004, transaction, and takes the position that the trial court erred
in admitting said narcotics into evidence over Alexander's objection. 

 Where the State shows the beginning and the end of the chain of custody, any gaps in the
chain of custody go to the weight of the evidence rather than to its admissibility, particularly where
the chain of custody goes inside the laboratory. Medellin v. State, 617 S.W.2d 229, 232 (Tex. Crim.
App. [Panel Op.] 1981); Beck v. State, 651 S.W.2d 827, 829 (Tex. App.--Houston [1st Dist.] 1983,
no pet.). We use an abuse of discretion standard when reviewing the trial court's decision to admit
evidence. Shuffield v. State, 189 S.W.3d 782, 792 (Tex. Crim. App. 2006); Burden v. State, 55
S.W.3d 608, 615 (Tex. Crim. App. 2001). An appellate court will not reverse a trial court's ruling
unless that ruling falls outside the zone of reasonable disagreement. Burden, 55 S.W.3d at 615. The
trial court does not abuse its discretion in admitting evidence where it believes that a reasonable juror
could find that the evidence has been authenticated or identified. Schneider v. State, 951 S.W.2d
856, 863 (Tex. App.--Texarkana 1997, pet. ref'd). If the article of evidence has no distinctive
features or is fungible, the item must be proven by showing a chain of custody, typically from the
scene of the crime to the courtroom. Hartsfield v. State, 200 S.W.3d 813, 818 (Tex.
App.--Texarkana 2006, pet. ref'd). Authentication of such an article may be accomplished by
marking the item and identifying it at trial as the same, so long as there is no evidence of tampering
or alteration. See Garcia v. State, 537 S.W.2d 930, 934 (Tex. Crim. App. 1976). The chain of
custody is conclusively proven if the officer is able to identify that he seized the item of physical
evidence, put an identification mark on it, placed it in the property room, and then retrieved the item
being offered on the day of trial. Stoker v. State, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989) (citing
Elliott v. State, 450 S.W.2d 863, 864 (Tex. Crim. App. 1970)). 

 In the case of the cocaine from the September 1 buy (State's Exhibits 2 and 2-A), investigator
Lance Cline testified that after McCoy purchased the cocaine, she delivered it to him and then he
marked the envelope and mailed it to the DPS laboratory. However, Lance Cline made a mistake
in his labeling, which we will discuss below. 

 This Court recently held that a chain of custody was proper where there was evidence the
defendant gave the drugs to an officer, who in turn gave the drugs to another officer who put the
drugs in an evidence locker, a DPS officer took the drugs to the Tyler crime laboratory, and a
supervising forensic scientist later delivered the drugs to court. Ingram v. State, 213 S.W.3d 515,
520-21 (Tex. App.--Texarkana 2007, no pet.). The instant case is very similar: McCoy said she
got the cocaine from Alexander; she gave it to Lance Cline, who placed it into an envelope
containing his return address and sent it by certified United States Postal Service mail addressed to
the DPS laboratory; the DPS laboratory received the envelope containing those markings and the
certified mail number with the substance enclosed, and marked it with a unique identifier. These
identifying marks stayed with it during the processing in the laboratory, and it was returned by a
laboratory chemist to Lance Cline in open court. 

 Alexander's argument is centered on investigator Lance Cline's mix-up in labeling the items
he put in the envelope to ship to the crime laboratory. Lance Cline said that it was his practice to
include a submission form in the envelope with the drugs which he sends to the crime laboratory. 
On the September 1 buy, he originally sent one of these forms, which referred to the drugs as his
"Exhibit 3." The laboratory tested this "Exhibit 3." However, on a copy of the form he had sent with
the drugs, he subsequently realized he had four exhibits (not three) from that buy: the video, the
compact disc recording of the buy, the drugs, and a business card Alexander had given McCoy with
his contact information. So Lance Cline changed the exhibit number for the drugs, now referring
to them as Exhibit 4, rather than Exhibit 3. Lance Cline said he thought he probably called the
laboratory office to change the number, but there was no evidence that the change was made. 
Chance Cline said his file showed no evidence that anyone called the laboratory to change the exhibit
number, but if anyone had called, office procedures would dictate that such a note would be present
in the laboratory's file. Further complicating the matter, when Lance Cline opened the sealed
envelope from the DPS crime laboratory in open court, his usual submission form was not in the
envelope as he had expected it would be. This surprised Lance Cline; and he thought it unusual that
the DPS laboratory had not returned the form to the envelope. He did say he could identify the
contents by use of the certified mail label on the envelope as being the same ones which were
submitted by him. Additionally, upon this Court's examination of the exhibits, the envelope
addressed to the DPS crime laboratory and the smaller package containing the cocaine both bore
several corresponding numbers, notations, and initials. 

 It is within the trial court's discretion to determine the sufficiency of a predicate. Smith v.
State, 683 S.W.2d 393, 405 (Tex. Crim. App. 1984). Absent an abuse of discretion, we will not
disturb the trial court's finding. Id. When the State shows the beginning and the ending of the chain
of custody, any gaps in between go to the weight, rather than the admissibility, of the evidence,
particularly if the chain of custody from seizure to the laboratory is shown. Id. 

 Alexander also argues that the record does not show that McCoy identified the drugs
admitted at trial as those which she bought from Alexander on September 1. However, he offers no
authority to suggest that such evidence is required in order to be admissible. Where the proffered
evidence is a fungible item, such as crack cocaine, a chain of custody from the scene of the crime
to the courtroom is usually required. Hartsfield, 200 S.W.3d at 818. All of the cases we have
reviewed addressing challenges to chains of custody commence with the officer taking possession
of the drug either from the defendant or from the cooperating buyer. See, e.g., Young v. State, 183
S.W.3d 699 (Tex. App.--Tyler 2005, pet. ref'd); Foster v. State, 101 S.W.3d 490 (Tex.
App.--Houston [1st Dist.] 2002, no pet.). 

 We have examined State's Exhibit 2 (the envelope in which Lance Cline sent the September 1
cocaine to the DPS laboratory) and State's Exhibit 2-A (the cocaine, contained in a plastic bag). 
Both of these have several markings of corresponding laboratory identification numbers, and each
bears the initials RAR and the date "12/17/04." Chance Cline testified that according to Rendon's
report, Rendon tested the drugs on or about December 20, 2004. We find the trial court did not
abuse its discretion in admitting State's Exhibit 2-A. 

 We deny this point of error.

V. Testimony that Another DPS Chemist Initially Weighed and Tested the Cocaine

 Alexander's fifth point of error complains the trial court erred in admitting testimony that
Rendon, Chance Cline's predecessor at the DPS laboratory, had weighed the cocaine before Chance
Cline did. Rendon had been the chemist who first tested and weighed the cocaine from both drug
sales. Alexander's appellate complaint is that testimony about Rendon's report on the September 1
drug buy lacked the proper predicate for admission as a business records exception. Therefore,
argues Alexander, Rendon's report was hearsay and the trial court erred in allowing its admission.

 The State urges (and it is correct) that numerous references were made to Rendon's report
without Alexander having objected. Investigator Lance Cline made at least three references to the
first report from the DPS laboratory which had listed a weight of 1.69 grams. Chemist Chance Cline
made numerous references to Rendon's report to which Alexander did not object. 

 Additionally, although Alexander claims the State offered no adequate predicate for
admission of testimony about Rendon's report (the report itself was not offered into evidence), late
in the State's questioning, on re-direct examination, the State asked Chance Cline if, based on the
"business records that you have that have been regularly kept by your department in the regular
course of their business that were made by someone at or near the time that the events were recorded
in those records" if such records indicated Rendon tested the drugs from the September 1 buy, and
if such drugs weighed 1.69 grams. Chance Cline answered in the affirmative. Without having to
determine whether the business records exception to the hearsay rule predicate is even necessary, so
long as the document itself was not offered into evidence, we find that this testimony served as a
sufficient predicate for admission of evidence regarding Rendon's test.

 Finally, we point out that a testifying expert who did not analyze a substance may testify to
his opinion about the substance and, in doing so, may rely upon the report of the chemist (as an
expert) who performed the analysis so long as the report is not offered into evidence. Martinez v.
State, 22 S.W.3d 504, 508 (Tex. Crim. App. 2000). Here, while Chance Cline did in fact test the
cocaine in question, no report was offered into evidence. It was proper for him to base his opinion
on Rendon's test results. 

 We affirm the trial court's judgment. 



 Bailey C. Moseley

 Justice


Date Submitted: June 21, 2007

Date Decided: July 19, 2007


Do Not Publish
1. This would be a violation of Article 38.08 of the Texas Code of Criminal Procedure, which
states, "Any defendant in a criminal action shall be permitted to testify in his own behalf therein, but
the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall
the same be alluded to or commented on by counsel in the cause." Tex. Code Crim. Proc. Ann.
art. 38.08 (Vernon 2005) (emphasis added).

2. The court originally enunciated this analysis in Mosley v. State, 983 S.W.2d 249, 259 (Tex.
Crim. App. 1998).
3. However, the curative instruction by the trial court in Archie was much more obscure than
the one made by this trial court. In Archie, the curative instruction was simply: "Instruct the jury
that they will--I sustain the objection and instruct the jury they will follow the Court's
instructions"--the jury charge having been a document which contained nineteen
paragraphs--without specificity regarding which instruction in the charge applied to the comment. 
Archie, 221 S.W.3d 695.
4. See Tex. Health & Safety Code Ann. § 481.112(b), (c) (Vernon 2003).