**Cass Roy COLEMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. A14–91–00328–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 18, 1992.

Henry L. Burkholder, III, Houston, for appellant.

Kimberly Aperauch Stelter, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## OPINION

SEARS, Justice.

Cass Roy Coleman brings this appeal from a conviction for aggravated sexual assault. Appellant pled not guilty and the case was tried before a jury. Appellant was found guilty, and upon a finding of true to two enhancement paragraphs, he was sentenced to ninety-nine years confinement in the Institutional Division of the Texas Department of Criminal Justice. We affirm.

On the evening of August 24, 1989, the complainant, S.K.N., attended bible class and then went to a restaurant with a friend. She arrived home at 11:00 p.m. While taking a bath, she looked up to find a black man with a gun standing in the doorway of the bathroom. The assailant ordered the complainant out of the bathtub, and she grabbed a towel as she stepped out. Appellant then asked her if she had money or jewelry, and the complainant retrieved some from the vanity. As she turned around, she saw that appellant had his penis out through the zipper of his pants. He then ordered the complainant to perform oral sex on him and she complied.

The complainant stopped momentarily and asked appellant if he was a believer in the Lord Jesus Christ. Appellant seemed agitated, told the complainant to take off her towel and continue what she was doing. A few moments later, appellant told her to

stop and forced her to have vaginal intercourse. The complainant kept the towel on top of her during this time. Appellant held the gun during the entire episode and waved it around when he would want her to do anything. Appellant finally left after taking a ring and $10.00 from the complainant but he said he would be back for some more "bible studies."

On August 30, 1989, the complainant was asked to view a lineup where she identified appellant as her assailant. She asked if she could see his arms because she remembered her assailant as having well-developed arms. After all the men in the lineup were instructed to roll up their sleeves, she again identified appellant as the attacker. She said she was sure it was him but would only assign a 95% probability because she could never be 100% certain of anything.

In his first point of error, appellant asserts the evidence was insufficient to support a conviction because the complainant was not 100% certain about her identification of the appellant, and appellant denied having committed the offense. The appellant believes there was sufficient evidence of misidentification because the complainant never mentioned appellant's rather prominent chest tattoo to the police.

When addressing the sufficiency of the evidence, the reviewing court must look at the evidence in the light most favorable to the verdict. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We then determine whether a rational trier of fact could have found the essential elements beyond a reasonable doubt. *Buxton v. State*, 699 S.W.2d 212, 213 (Tex.Crim.App.1985), *cert. denied*, 476 U.S. 1189, 106 S.Ct. 2929, 91 L.Ed.2d 556 (1986). The credibility of witnesses is not reviewed on appeal. *Bowden v. State*, 628 S.W.2d 782, 784 (Tex.Crim. App.1982). Moreover, the jury is entitled to reject part or all of a witness' testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim.App.1981).

The assailant never removed his clothing when he sexually assaulted the complainant. Only his penis was exposed through the unzipped pants. Further, during trial the following testimony was elicited from complainant by appellate counsel:

Q: During the whole time your assailant was in your house, did he ever take this T-shirt off?

A: No, he did not.

\*　　\*　　\*　　\*　　\*　　\*

Q: ... How much of his chest were you able to observe during the whole time he was there that evening?

A: None.

Q: So if he had any kind of unusual tattoos or marks, you wouldn't have been able to observe it?

A: No, sir.

We fail to see how this testimony, or testimony by appellant that he has a tattoo, shows evidence of misidentification on the complainant's part. The shirt was never removed, therefore, the complainant would not be able to describe appellant's chest.

In regards to the percentage assigned to her identification, the complainant gave a reasonable explanation for it; her scientific training prevented her from ever being 100% certain of anything. Additionally, the complainant said that she had seen her attacker's face very clearly and was sure the man in the lineup was the same person. After she saw his arms, it verified what she already knew—that he was the man who assaulted her in her house. Contrary to appellant's position that the verdict was supported *solely* by the complainant's testimony, the DNA from complainant's vaginal swab matched the appellant's blood sample. We find that a rational trier of fact could have found appellant guilty beyond a reasonable doubt. Appellant's first point of error is overruled.

In appellant's second point of error, he contends that the trial court erred in overruling his objection to the admission of the vial of complainant's blood. He contends the State failed to prove the blood was drawn from this complainant, and the exhibit was essential to the DNA expert's opinion. Four exhibits were used in the DNA testing: (1) the vial containing appellant's blood; (2) the vaginal swab; (3) the towel recovered from the complainant's

bed; and, (4) the vial of the complainant's blood.

Appellant asserts that establishing a known sample of the complainant's DNA was necessary to the ultimate question of identifying the appellant through the DNA in the semen recovered from the vaginal swab. Appellant points to the trial record wherein Ms. Das only testified that she had taken a sample of S.N.'s blood, or that the vial contained the blood of S.K.N. Appellant argues that this was insufficient to show that the blood donor was the same person as the complainant, S.K.N. Because Ms. Das, the blood collector, said Ms. N. consented to the "blood drive," appellant contends that it is possible that she collected blood from several persons who may have used the same name as the complainant and there was no testimony actually linking the blood with this case.

Ms. Das testified she took a blood sample from appellant on January 25, 1990, subsequent to a warrant. She then met with S.N. to draw her blood in regard to the same case. The prosecutor asked why she drew the blood of S.N. as well as drawing blood from defendant in "this sort of investigation." Ms. Das responded that she drew blood "so it could be compared with the evidence that was collected at a previous time." Ms. Das transferred both samples to "the chemist working the case."

Ms. Hammond, a forensic scientist, testified that DNA testing was performed on the complainant's towel, the vaginal swab, the appellant's blood sample and the blood sample of S.N. From the appellant's blood sample, a DNA pattern was isolated and it matched a DNA pattern taken from the vaginal swab in the complainant's rape kit. Ms. Hammond also isolated a single DNA pattern from the complainant's towel which matched the only other DNA pattern remaining from the complainant's vaginal swab. The sample of blood taken from S.N. also matched the DNA patterns taken from the towel and vaginal swab. The margin of error of the DNA match as to appellant was 1 in 478 million.

■■■ Breaks in the chain of custody go to weight rather than admissibility of evi-

dence. *See Beck v. State*, 651 S.W.2d 827, 829 (Tex.App.—Houston [1st Dist.] 1983, no pet.). Further, TEX.R.CRIM.EVID. 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." As long as the trial court believed that a reasonable juror could find the evidence has been authenticated or identified, the court should admit the evidence. One manner of authenticating is through the internal patterns or distinctive characteristics of the piece of evidence. TEX.R.CRIM.EVID. 901(b)(4).

The testimony of Ms. Das does not comport with appellant's suggestion that there could be any number of women with the same name as the complainant who happened to be donating blood. Ms. Das testified that S.N.'s blood was drawn to compare with the evidence already taken from the appellant, and she specifically mentioned giving it to the chemist working "on the case." This is sufficient to show that the complainant was the same person as the blood donor. Additionally, the DNA pattern served as a distinctive characteristic of the proffered evidence. Ms. Hammond's testimony that the DNA from S.N.'s blood sample matched the DNA on the vaginal swab authenticates or identifies that the complainant and the blood donor are one and the same person. We find the admission of Exhibit 23 (the complainant's blood) was not error.

■■■ Even assuming *arguendo*, that the exhibit was not properly identified to be admitted into evidence, this court must then conduct a harmless error analysis to determine beyond a reasonable doubt if it made any contribution to a finding of guilt. TEX.R.APP.P. 81(b)(2). If we take the remaining three exhibits used in the DNA testing we would find that the substance on the vaginal swab was taken from the complainant's vagina. The vaginal swab revealed DNA patterns from two sources—one being the female from whom the swab was taken, and the other from the source of the semen or sperm. The DNA pattern

taken from appellant's blood sample matched the DNA from the source of the semen on the vaginal swab. The DNA pattern discovered on complainant's towel also matched the remaining DNA pattern taken from the complainant's vaginal swab. Therefore, the DNA patterns taken from the swab were both accounted for by the remaining pieces of evidence, and at the very least, the DNA in appellant's blood showed he was the source of semen in the complainant's vagina. In light of this evidence, as well as the complainant's out-of-court and in-court identifications of appellant, we find that any error in admitting the exhibit of complainant's blood sample was harmless. The second point of error is overruled.

█ In his final point of error, appellant asserts that the trial court committed reversible error in overruling the admission of Exhibit 22, the appellant's blood sample, because it was not taken as directed in the search warrant. Specifically, the warrant directed any peace officer to take appellant to a "Medical Doctor where said doctor shall take a blood,[sic] of a volume of at least 10 cc's from said person in a manner consistent with contemporary medical standards for the taking of such samples." Appellant is not complaining that the taking of blood by a phlebotomist (blood collector) is unreasonable, that it was taken without a warrant, or as to any matter concerning the authenticity of the sample as used for DNA comparison purposes. Appellant is only contending that the sample should not have been admitted into evidence because it was not taken by a "medical doctor" as provided in the warrant. Appellant argues that the magistrate made a pre-search determination of reasonableness as mandated by *Schmerber*, and found that the reasonable means was to have a medical doctor draw the blood. *See Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

As a phlebotomist, Ms. Das' occupation is the collection of blood. She had experience collecting blood for both the Southwest Memorial Hospital and the Houston Police Department. Ms. Das also explained the manner in which she draws the blood and it is both safe and medically accepted. Under the strict standard of *Schmerber*, the manner in which the appellant's blood was taken was safe and reasonable. However, we must determine whether the defendant's rights were violated when his blood was drawn in a manner other than that directed by the magistrate.

In reviewing the execution of a warrant, the manner in which that warrant was executed is subject to judicial review for a determination of reasonableness. *See Dalia v. State*, 441 U.S. 238, 258, 99 S.Ct. 1682, 1694, 60 L.Ed.2d 177 (1979). The magistrate in the instant case required appellant's blood to be taken in a "manner consistent with contemporary medical standards for the taking of such samples." The Texas Court of Criminal Appeals has held that:

> [W]e review technical discrepancies with a judicious eye for the procedural aspects surrounding issuance and execution of the warrant. To do otherwise would defeat the purpose behind the warrant requirement, and provide protection for those to whom the issue on appeal is not one based upon the substantive issue of probable cause but of technical default by the State.

*Green v. State*, 799 S.W.2d 756, 757–58 (Tex.Crim.App.1990). The magistrate found there was probable cause for taking the blood sample of appellant to use in the instant case. Regardless of whether the blood was taken by a physician or a phlebotomist, the blood was authorized to be drawn. We find that the manner in which appellant's blood was taken was reasonable, and further find that execution of the warrant substantively followed the order of the magistrate. The trial court did not err in admitting the appellant's blood sample. Appellant's third point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.