In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00108-CR
______________________________


DONALD BERFORD JOHNSON, III, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 32702-A


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Donald Berford Johnson, III, was convicted by a jury for burglary of a habitation. 
The jury assessed punishment at six years' imprisonment and a $3,000.00 fine. The trial
court sentenced Johnson in accordance with the jury's verdict, but ordered such sentence
to commence "after serving sentence on parole revocation." Johnson appeals, contending
the evidence establishing his identity as the burglar is factually insufficient. We affirm.
Â Â Â Â Â Â Â Â Â Â The State's evidence showed that, at the time of the offense in December 2004, the
victim, Corey Darnell, lived in a trailer house with his girlfriend, Megan Gore. However,
during this time, Darnell was spending nights at the county jail pursuant to a work-release
program and Gore was sleeping at the home of Darnell's mother. Darnell and Gore were
acquainted with Johnson, having met him a few months before the burglary when they
spent three days together, assisting a mutual friend to move. In the process of assisting
this friend, Johnson was along when they stopped by Darnell's house to pick up some item. 
In the days before the burglary, Johnson called Gore on her cell phone several times. 
During one of those conversations, Gore told Johnson that Darnell was in jail and would
be there until February and that she was staying with Darnell's mother. She did not tell
Johnson that Darnell was on a work-release program.
Â Â Â Â Â Â Â Â Â Â On the morning of December 20, 2004, Darnell was released from jail around
4:00Â a.m. Gore picked him up, and they drove directly to the house where they lived. They
first sought to enter the house through the front door, but a security chain on the inside was
engaged. Darnell then went to the back door, leaving Gore at the front. When Darnell
entered the house through the back door, he observed Johnson standing in the master
bedroom, wearing some of Darnell's clothing. Darnell asked Johnson what he was doing,
to which Johnson replied, "It's not what it looks like." Darnell then exited the house through
the back door, ran to the front, and told Gore to get in the car and call the police. When
Darnell returned to the back of the house, Johnson was no longer there and Darnell
concluded he had fled, jumping a chain-link fence. The investigating officers found a pager 
stuck in the fence, which Darnell identified as belonging to Johnson. Other items were
found inside the house that did not belong to Darnell or Gore, including a cell phone and
charger, a watch, a ring, and clothing. Darnell testified that the items missing from the
house included a new pair of overalls, a watch, a pair of tennis shoes, a pair of pants, and
a toboggan. 
Â Â Â Â Â Â Â Â Â Â Two defense witnesses, Brian Parks and Jami LeGrand, testified they had spent the
entire night of December 19â20, 2004, with Johnson at Parks' house. Parks testified he
had seen Johnson's cell phone before and that the one found in Darnell's house was not
Johnson's. He further testified he had never seen Johnson with any of the other property
left at that house. LeGrand, a convicted felon awaiting transfer to prison, testified she was
familiar with Johnson's cell phone and that the one left at Darnell's house was not
Johnson's. She also testified she had never known Johnson to possess a pager or any of
the other items left at Darnell's house.
Â Â Â Â Â Â Â Â Â Â In a factual sufficiency review, the appellate court views all the evidence in a neutral
light and determines whether the evidence supporting the verdict is too weak to support
the finding of guilt beyond a reasonable doubt or if evidence contrary to the verdict is
strong enough that the beyond-a-reasonable-doubt standard could not have been met.
Threadgill v. State, 146 S.W.3d 654, 664 (Tex. Crim. App. 2004) (citing Zuniga v. State,
144 S.W.3d 477, 486 (Tex. Crim. App. 2004)). If the evidence is factually insufficient, then
we must reverse the judgment and remand for a new trial. Clewis v. State, 922 S.W.2d
126, 135 (Tex. Crim. App. 1996). 
Â Â Â Â Â Â Â Â Â Â Applying these standards, we cannot say the evidence is factually insufficient. 
Darnell positively identified Johnson as the person he caught inside his house. Parks and
LeGrand said this was impossible since they were with Johnson at Parks' house all night. 
The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and of the
strength of the evidence. Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). 
The jury apparently believed Darnell and disbelieved Johnson's alibi witnesses. The
evidence supporting the verdict is not too weak to support the finding of guilt beyond a
reasonable doubt. Further, the evidence contrary to the verdict is not strong enough that
the beyond-a-reasonable-doubt standard could not have been met. Johnson's sole point
of error is overruled.
Â Â Â Â Â Â Â Â Â Â We affirm the judgment.




Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice
Â 
Date Submitted:Â Â Â Â Â Â January 12, 2006
Date Decided:Â Â Â Â Â Â Â Â Â January 13, 2006

Do Not Publish



n Supp. 2003). If the crime occurs "in, on, or within 1,000 feet of
any real property that is owned, rented, or leased to a school or school board" (defined by statute as
a drug-free zone), the punishment range for delivering less than one gram of cocaine is enhanced to
that of a third-degree felony. Tex. Health & Safety Code Ann. § 481.134(d) (Vernon Supp.
2003). 

 Henry Boening, Superintendent of the G.I.S.D., testified G.I.S.D. owns Kermit Courville
Stadium located on Galveston Island. According to Boening's testimony, the stadium is used by
G.I.S.D. for various sporting events, including both varsity and subvarsity football games, as well
as middle school track activities. Boening also testified the stadium was being used by the school
during October of 1999. (The indictment alleged the offense occurred on October 7, 1999.) The trial
court admitted, without objection, photographs of the stadium, dressing rooms located on the north
side of the stadium, and the nearby parking lot owned by G.I.S.D. 

 Fluellen does not direct us to any evidence contradicting Boening's testimony that the stadium
was owned by G.I.S.D. on October 7, 1999. We find that, viewing the evidence in the light most
favorable to the verdict, a rational trier of fact could have found the crime occurred in, on, or within
1,000 feet of property owned, rented, or leased by G.I.S.D. Similarly, viewing the evidence in a
neutral light, the evidence on whether the crime occurred at or within 1,000 feet of the stadium is
neither so weak as to be clearly wrong or manifestly unjust, nor greatly outweighed by a
preponderance of the evidence as to be clearly wrong. See Zuliani, 2003 WL 246065, at *2. The
State is not required to admit into evidence deeds or maps showing the stadium was school property. 
The State may rely "on any other evidence or testimony to establish any element of an offense for
which punishment is increased under Section 481.134." Tex. Health & Safety Code Ann.
Â§Â 481.135 (Vernon Supp. 2003). Accordingly, we find the evidence factually and legally sufficient
to support the drug-free zone enhancement.

 B. Identification of Fluellen as the Person Who Delivered the Cocaine

 Fluellen also contends the evidence is insufficient to identify him as the person who sold
cocaine to the officer. Officer Bjerke identified Fluellen both in the courtroom and immediately after
Bjerke bought the drugs as the person who sold him the crack cocaine. During the drug sale,
Fluellen and Bjerke were as close as six to twelve inches away from each other; Bjerke had ample
opportunity to see Fluellen's face and appearance. That is legally sufficient evidence to support the
verdict. 

 In addition, Bjerke identified the other voice on the tape of the transaction as that of Fluellen. 
As the State played the audiotape for the jury, Bjerke testified as follows:

 A. I once again as I reflected on the tape pulled up and asked him
[Fluellen]. And that's whenever he [Fluellen] once again told me to make the block. 
He was waiting for his little friend to come out of the alley.


 . . . .


 Q. [What happens after you circle the block for the sixth time and return
to the corner where Fluellen is standing?]


 A. I pulled my vehicle up. Mr. Fluellen approached my vehicle from the
passenger's side of the vehicle. At that point we conversed about the deal. I was, of
course, going to request to see the narcotics before I handed over the money. He
wanted to see the money before he handed over the narcotics.


(Emphasis added.) Reading this testimony, in conjunction with listening to the audiotape of the drug
transaction, it is clear from Bjerke's testimony that he identified the other voice on the tape as that
of Fluellen. On the audiotape, Bjerke described the other speaker as a black male wearing a
Pittsburgh Steelers football jersey, a black baseball cap, and black tennis shoes, who told Bjerke to
"make the block." Bjerke testified before the jury that Fluellen was wearing a number 10 Pittsburgh
Steelers football jersey and dark pants when he sold Bjerke crack cocaine. 

 The State also notes that Fluellen's aunt, Helen Solzano, testified she saw Fluellen wearing
a number 10 Pittsburgh Steelers jersey on the night in question. She further admitted that, while she
did not believe Fluellen was the person on the audiotape of the drug transaction, she also could not
exclude him as the possible speaker. 

 Viewing this evidence in the light most favorable to the jury's verdict, we find that a rational
trier of fact could find each element of the crime beyond a reasonable doubt. Bjerke testified a black
male wearing a Pittsburgh Steelers jersey sold him two rocks of crack cocaine on October 7, 1999. 
The audiotape clearly evidences a drug transaction, and Bjerke identified Fluellen as the person who
sold him the drugs. In addition, Bjerke made an in-court identification of Fluellen as the person who
sold him two rocks of crack cocaine. 

 There is also evidence contradicting the identification. Fluellen's mother emphatically denied
that the other voice on the audiotape belonged to Fluellen, and Fluellen's sister could not identify the
seller's voice on the audiotape as belonging to Fluellen. 

 However, reviewing all the evidence in a neutral light, we find that the evidence identifying
Fluellen as the person who sold the crack cocaine is not so weak as to be clearly wrong or manifestly
unjust, nor is the finding that he was the person who sold the drugs so contrary to the great weight
and preponderance of the evidence as to be clearly wrong. See Zuliani, 2003 WL 246065, at *2. 
Therefore, the evidence is factually sufficient to support the conviction. The contentions of error are
overruled.

3. Prosecutor Recusal

 Fluellen also contends he was denied due process of law when the trial court denied his
motion to recuse the prosecutor. As mentioned above, the prosecutor and Fluellen had a previous
encounter at which time words were exchanged. A trial court may not disqualify a district attorney
or his staff on the basis of a conflict of interest that does not rise to the level of a due process
violation. State ex rel. Hill v. Pirtle, 887 S.W.2d 921, 927 (Tex. Crim. App. 1994); State ex rel.
Eidson v. Edwards, 793 S.W.2d 1, 6 (Tex. Crim. App. 1990). There are instances when a prosecutor
must recuse himself from the prosecution of an individual. If there is a conflict of interest on the part
of the district attorney or his assistants, however, the responsibility of recusal lies with them--not the
trial court. Â Edwards, 793 S.W.2d at 6. If the prosecution's failure to recuse itself violated Fluellen's
due process rights, such conviction would violate the Fourteenth Amendment to the United States
Constitution. Id. 

 The only evidence cited by Fluellen to support his position that the prosecutor manifested
prejudice or vindictiveness at trial was the fact that a Batson challenge was sustained in the first jury
selection. Fluellen argues that, "[t]he potential for bias and misconduct by the prosecutor was simply
too great for the court to allow the prosecutor to continue on the case . . . ." The court has no
authority to remove the prosecutor for any lesser reason than a violation of due process. There is no
showing of a due process violation. At most, there is only the showing of a potential for such a
violation. Likewise, there is no evidence of any conduct of the prosecutor that rises to the level of
a due process violation requiring his disqualification. The contention of error is overruled.

4. Admission of Tape Recording

 Fluellen next contends the trial court erred by admitting an audiotape recording of the
transaction into evidence in the absence of adequate authentication. We use an abuse of discretion
standard when reviewing the trial court's decision to admit evidence. Torres v. State, 71 S.W.3d 758,
760 (Tex. Crim. App. 2002); Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). An
appellate court will not reverse a trial court's ruling unless that ruling falls outside the zone of
reasonable disagreement. Torres, 71 S.W.3d at 760; Burden, 608 S.W.2d at 615. The trial court
does not abuse its discretion in admitting evidence where it believes that a reasonable juror could
find the evidence has been authenticated or identified. Schneider v. State, 951 S.W.2d 856, 863
(Tex. App.-Texarkana 1997, pet. ref'd); Pena v. State, 864 S.W.2d 147, 152 (Tex. App.-Waco 1993,
no pet.) (op. on reh'g); Coleman v. State, 833 S.W.2d 286, 289 (Tex. App.-Houston [14th Dist.]
1992, pet. ref'd).

 Fluellen contends the audiotape was inadmissible under Rule 901 because the officer who
operated the tape recorder did not testify and there was no evidence to show his competence to
operate the machine or that it was operating properly when the recording was made. (3) 

 Bjerke had the microphone but did not operate the recording device. Fluellen argues there
is no testimony about whether the other agent was qualified to operate the recording device and its
capability and reliability. Bjerke testified he could identify every voice of every person to whom he
spoke during the making of the tape. He also testified the tape accurately depicts what took place
that evening.

 The Texas Court of Criminal Appeals in Angleton v. State, 971 S.W.2d 65 (Tex. Crim. App.
1998), determined that Rule 901 of the Texas Rules of Evidence controls admissibility of tapes and
overruled previous cases suggesting additional requirements. (4) Here, the officer testified he was
present when the tape was made; in fact, he was wearing the wire, he identified all voices on the
tape, and he further stated the tape accurately depicted what took place that evening. In this case,
one of the participants in the conversation testified that he had listened to the tape and that it
accurately recorded the conversation. Where a participant can testify that the final product accurately
portrays the interview, then it may be inferred that the operator was competent. Falcetta v. State,
991 S.W.2d 295, 298-99 (Tex. App.-Texarkana 1999, pet. ref'd). Fluellen's contention regarding
the authentication of the tape is without merit.

 Fluellen next contends the tape was improperly admitted because the State did not establish
an adequate chain of custody. Before the Rules of Evidence were adopted, the strength of the chain
of custody went to the weight of the evidence rather than to its admissibility. DeLeon v. State, 505
S.W.2d 288, 289 (Tex. Crim. App. 1974). The Rules of Evidence do not specifically address the
chain of custody issue. As previously stated, the ultimate test for authentication or identification as
a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the
matter in question is what its proponent claims. Reavis v. State, 84 S.W.3d 716, 719 (Tex.
App.-Fort Worth 2002, no pet.) (proof surveillance videotape placed in recorder and record button
pressed, along with evidence tape was of observed behavior is adequate); Murray v. State, 864
S.W.2d 111 (Tex. App.-Texarkana 1993, pet. ref'd); see Tex. R. Evid. 901(a). 

 The evidence in this case shows that, after Bjerke initialed the tape, he turned it over to Agent
Larvin. Bjerke did not know what procedure had been followed in storing this particular tape for
later use at trial, but did testify about the standard procedures used to preserve evidence. He also
testified it was an accurate rendition of the conversation, and there is no evidence to suggest that the
tape was tampered with or that it did not contain an accurate rendition of the conversation between
Bjerke and Fluellen. Breaks in the chain of custody go to the weight rather than the admissibility
of evidence. Schneider, 951 S.W.2d at 863.

 Fluellen has not shown that the State tampered with the tape, much less to the extent the tape
no longer fairly and accurately depicted the conversations between Bjerke and Fluellen. As long as
a trial court believes that a reasonable juror could find the evidence has been authenticated or
identified, the trial court should admit the evidence. Coleman, 833 S.W.2d at 289; see Jackson v.
State, 968 S.W.2d 495 (Tex. App.-Texarkana 1998, pet. ref'd); Maier v. State, 792 S.W.2d 188 (Tex.
App.-Houston [1st Dist.] 1990, pet. ref'd) (holding when evidence is object or document with unique
or distinctive characteristics, testimony of a person who perceived the item suffices to identify the
evidence in court).

 Error has not been shown. The contention is overruled.

5. Jury Charge - Partial Geesa Instruction

 Fluellen next contends the trial court erred by including language from the former "Geesa"
instruction. (5) The Texas Court of Criminal Appeals has overruled the portion of Geesa requiring the
trial court to define reasonable doubt for the jury. Paulson v. State, 28 S.W.3d 570, 573 (Tex. Crim.
App. 2000). In Paulson, the court found that the better practice was to give the jury no definition
or explanation of the term. 

 The complained-of portion of the charge reads as follows:

 It is not required that the prosecution prove guilt beyond all possible doubt. 
It is required that the prosecutor's proof exclude all "reasonable doubt" concerning
the Defendant's guilt.

 Counsel did not object to the inclusion of this term in the jury charge. When the alleged
charge error has not been objected to, reversal is required only if error exists and if it has caused
harm so egregious the defendant has not had a fair and impartial trial. If we determine it was error
to give this charge, we then determine whether egregious harm has been shown. To do so, we must
examine the entire jury charge, the state of the evidence, including contested issues and the weight
of probative evidence, the argument of counsel, and any other relevant information revealed by the
record of the trial as a whole. Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op.
on reh'g). The purpose of this review is to illuminate the actual, not just theoretical, harm to the
accused. Id. at 174; Roberts v. State, 849 S.W.2d 407, 410 (Tex. App.-Fort Worth 1993, pet. ref'd).

 As we recognized in In re C.S., 79 S.W.3d 619 (Tex. App.-Texarkana 2002, no pet.), the
majority in Paulson, 28 S.W.3d 570, rejected the reasonable doubt definition for several reasons. 
The majority in Paulson concluded the definition was repetitious, logically infirm, and if followed
literally, would cause a jury to never convict anyone. 

 The Waco Court of Appeals has reviewed a charge which provided exactly the same two
sentences from the Geesa instruction. Phillips v. State, 72 S.W.3d 719, 721 (Tex. App.-Waco 2002,
no pet. h.). The Waco court concluded Paulson required either all of the instruction be given (by
agreement of counsel) or nothing be given. However, we find nothing in Paulson to suggest that
giving a correct statement of the law that happened to be contained within the Geesa instruction
would necessarily be error and decline to take the all-or-nothing position espoused in Phillips.

 The Houston First Court of Appeals has taken this position in Carriere v. State, 84 S.W.3d
753, 759 (Tex. App.-Houston [1st Dist.] 2002, pet. filed). In that case, exactly the same language
was given in the charge. The Houston court acknowledged the Waco decision, but disagreed with
its analysis.

 According to Paulson, when the court is evaluating a jury charge for a
reasonable-doubt-definition error, we must first determine if a definition of
reasonable doubt exists in the jury charge. Paulson, 28 S.W.3d at 573. If not, the
charge does not violate Paulson. In our case, the trial court instructed the jury "it is
not required that the prosecution prove guilt beyond all doubt." This instruction does
not lessen the State's burden of proof, especially in light of the second sentence which
correctly repeats the State's burden that, "it is required that the prosecution's proof
excludes all reasonable doubt concerning the defendant's guilt." The charge was
proper because it did not define reasonable doubt--it merely instructed the jury that
appellant's guilt must be proved beyond a reasonable doubt, not beyond all possible
doubt.

Id. The court then concluded this is simply not the sort of instruction prohibited by Paulson. 
Because there was no error, then no harm analysis was conducted.

 There is a split among the appellate courts that have addressed this issue on the question of
whether use of this language in the charge is error. Cases holding it is not error to include a portion
of the Geesa definition of reasonable doubt in the jury charge are Minor v. State, 91 S.W.3d 824
(Tex. App.-Fort Worth 2002, pet. filed); Brown v. State, 91 S.W.3d 353 (Tex. App.-Eastland 2002,
no pet.); Carriere, 84 S.W.3d at 759. 

 In Rodriguez v. State, No. 03-01-00573-CR, 2002 WL 1723875, at *4-6 (Tex. App.-Austin
July 26, 2002, pet. ref'd), although concluding initially that the language was not too intrusive on the
jury's application of the reasonable doubt standard, the Austin court then concluded it was error to
give a portion of the charge over objection. The court conducted an Almanza analysis and concluded
the error was harmless.

 As discussed above, holding the trial court erred by giving the exact instruction given in this
case: Phillips, 72 S.W.3d at 721. 

 In Dooley v. State, 65 S.W.3d 840, 843-44 (Tex. App.-Dallas 2002, pet. ref'd), the Dallas
court found that the use of a complete Geesa instruction when defense counsel did not object to its
inclusion did not render a jury verdict erroneous as a matter of law. See also In re C.S., 79 S.W.3d
at 622 (finding error in giving complete Geesa instruction, but was harmless based on Paulson
court's conclusion instruction actually favored defendant rather than State).

 Having reviewed these cases, we agree with the analysis used by the Houston First Court of
Appeals in the Carriere case and conclude error has not been shown.

 Even if error exists, however, this is a correct, nonconfusing statement of the law which does
not alter the burden of proof or allow the State to obtain a conviction based on a lesser standard than
"reasonable doubt," and as required by Paulson, it does not improperly define that term for the jury. 
Under these circumstances, after a thorough evaluation of the record applying the less stringent
standard, we cannot say the charge error caused harm. See Ovalle v. State, 13 S.W.3d 774, 786 (Tex.
Crim. App. 2000) (factors to consider). 

 The contention of error is overruled.

6. Motion to Quash Indictment

 Fluellen next contends the trial court erred by overruling his motions to quash the indictment. 
Fluellen contends the indictment was inadequate because it alleged he sold drugs within 1,000 feet
of a "premises" owned by a "school" rather than within 1,000 feet of "real property" owned by a
"school district." (6) The statute provides that an offense is committed if it occurs within 1,000 feet of
real property owned by a school. That is the language used in the indictment. Fluellen also
contends that, because the indictment (as amended) only specifies that property as "a stadium," it is
inadequate to provide him with notice. 

 As the State points out, Fluellen's argument concerning the "premises" rather than "real
property" language has been waived because that argument was never brought to the attention of the
trial court. See Tex. R. App. P. 33.1. (7)

 The second question is whether the allegation that the property was owned by a "school"
rather than a "school district" was preserved. The statute enhances the offense when committed
within 1,000 feet of real property owned by a school. The indictment alleged the property was
owned by a school district. This is a distinction without a difference. The terms used by the
Legislature as descriptive of property owned by a school clearly include property owned by the
school district rather than by the individual campuses. Indeed, as the State suggests, with the
exception of private schools which might be individual entities, school property is typically owned
not by individual campuses, but by the school district of which those campuses are a part. (8) There
is no notice problem in this regard, and we conclude that, by alleging and proving ownership of the
property by a school district, the intent of the statute is implemented.

 Fluellen also mentions his objection that the indictment was inadequate because it described
the school property as "a stadium" but did not specify the stadium involved. There is no clear
contention of error, argument, or discussion on this matter, and it is not properly before this Court
for review.

 Fluellen finally complains the indictment should have been quashed because it did not plead
a mental state regarding his impingement on the "drug-free zone." The motions to quash do not raise
this matter. It was therefore not preserved for review. See Tex. R. App. P. 33.1. Even if it were,
however, there is no authority suggesting that a separate mens rea must be proven in this context. 
The mens rea is connected with the wrongful act. The fact that it took place in a "drug-free zone"
enhances the punishment. There is nothing that suggests that the intent stretches beyond the criminal
offense and that there must also be a separate intent to commit the act in a particular place. See
generally Uribe v. State, 573 S.W.2d 819, 821 (Tex. Crim. App. [Panel Op.] 1978) (no necessity to
allege separate culpable mental state to raise penalty for offense of carrying handgun on premises
where alcohol was sold).

7. Jury Charge--"Drug-Free Zone" Allegation

 Fluellen next contends the instructions on reasonable doubt involving the "drug-free zone"
were confusing and lowered the State's burden of proof. In his argument, Fluellen posits that the
charge was structured so that the jury could only fail to find him guilty if it had a reasonable doubt
the delivery was in a "drug-free zone" and that it otherwise presumed his guilt. 

 Again, counsel did not object to this alleged charge error; thus, if error exists, we reverse only
on a showing of egregious harm. Almanza, 686 S.W.2d at 151. The complained-of language
follows:

 Now if you find from the evidence beyond a reasonable doubt that on or about
the 7th day of October, 1999, in Galveston County, Texas, ROBERT JOSEPH
FLUELLEN, did then and there intentionally or knowingly deliver, by actual transfer,
to Allen Bjerke, a controlled substance, . . . and it is further presented in and to said
Court that the Defendant committed the above offense within 1,000 feet of premises
owned by the Galveston, Texas, Independent School District, to-wit: a Stadium, then
you will find the Defendant, ROBERT JOSEPH FLUELLEN, guilty of Delivery of
a Controlled Substance, to-wit: cocaine in a drug free zone, as alleged in the
indictment. 

 Unless you so find from the evidence, or if you have a reasonable doubt that
the Defendant delivered a controlled substance within 1,000 feet of a premises owned
by Galveston, Texas, Independent School District, to-wit: a Stadium, you will find
the Defendant "not guilty." 


Fluellen takes the position that the converse second paragraph required the jury to find him guilty
unless the State failed to prove the delivery within the drug-free zone. This is not an accurate
reading of the charge. It is a fairly typical converse charge, which submits essential elements of the
offense with instruction to acquit if the jury does not find the element to be true or has a reasonable
doubt about it. 

 The charge does not improperly change a burden of proof, nor does it presume Fluellen's guilt
for delivery. No error has been shown.

8. Punishment Evidence

 Fluellen also contends the trial court erred by allowing the State to introduce a tape recording
of an extraneous offense at the punishment stage of the trial. At trial, counsel objected to the
admission of the tape because the underlying indictment for the extraneous offense had been
dismissed and because the proper predicate had not been laid. Although the court initially sustained
the generic "predicate" objection, it did so erroneously. An objection to the admission of evidence
must be reasonably specific so as to apprise the trial court of its legal basis. A mere objection based
on improper predicate requires trial counsel to inform the trial court exactly how the predicate is
deficient. Mutz v. State, 862 S.W.2d 24, 30 (Tex. App.-Beaumont 1993, pet. ref'd); Waldon v. City
of Longview, 855 S.W.2d 875, 878 (Tex. App.-Tyler 1993, no writ); Jones v. State, 825 S.W.2d 470,
472 (Tex. App.-Corpus Christi 1991, pet. ref'd); Cartwright v. State, 807 S.W.2d 654, 656 (Tex.
App.-Beaumont 1991), aff'd, 833 S.W.2d 134 (Tex. Crim. App. 1992).

 The State requested a more specific objection specifying which element of the predicate the
State had failed to meet. The trial court found the question appropriate and asked defense counsel
to explain. Counsel responded as follows:

 They haven't tied it to any crime. In other words, if the tape was able to be
introduced, it has to be tied to a particular offense, and that would be any kind of
introduction of a drug or some simulated substance, your Honor. It hadn't been
shown. It has not been done. 


This objection does not comport with the argument made before this Court. Fluellen's present
contention is the tape should not have been admitted because it was not "properly identified,
preserved or authenticated." The argument now being raised was not presented to the trial court for
review, and the contention was therefore not preserved for appellate review. Tex. R. App. P. 33.1.

9. Constitutionality of Tex. Health & Safety Code Ann. Â§ 481.134

 Fluellen next contends Tex. Health & Safety Code Ann. Â§ 481.134 (Vernon Supp. 2003)
is unconstitutional on its face. There are two types of challenges to the constitutionality of a statute: 
the statute is unconstitutional as applied to the defendant, or the statute is unconstitutional on its
face. A constitutionality challenge based on application to the defendant's case cannot be raised for
the first time on appeal. Briggs v. State, 789 S.W.2d 918, 923 (Tex. Crim. App. 1990); Smith v.
State, 10 S.W.3d 48, 49 (Tex. App.-Texarkana 1999, no pet.). However, a defendant may wait until
his appeal to contend, for the first time, that a statute is void on its face. A facial challenge to the
constitutionality of a statute is difficult to mount successfully because the challenger must establish
that no set of circumstances exists under which the statute is valid. Santikos v. State, 836 S.W.2d
631, 633 (Tex. Crim. App. 1992). To prevail on such a claim, the challenger must show that in its
operation the statute is unconstitutional as applied in the situation. Id. The mere fact the statute may
be unconstitutional as applied to others is not sufficient. Id.; see also Cantu v. State, 939 S.W.2d
627, 639 (Tex. Crim. App. 1997); Parent v. State, 621 S.W.2d 796, 797 (Tex. Crim. App. 1981);
Perez v. State, 938 S.W.2d 761, 764 (Tex. App.-Austin 1997, pet. ref'd). The distinction between
the two types of challenges turns on the issue of the trial court's jurisdiction: if a statute is facially
unconstitutional, the trial court lacks all jurisdiction; if a statute is unconstitutional in its individual
application, the trial court has plenary jurisdiction, but the accused may have to affirmatively assert
a defense of unconstitutional application. See Casares v. State, 768 S.W.2d 298, 299 (Tex. Crim.
App. 1989). 

 Fluellen contends the statute is unconstitutional because: (1) it is vague and overly broad,
(2)Â it is internally inconsistent, (3) it is "totally arbitrary in its application to persons committing
identical offenses," (4) the statute lacks a culpable mental state with respect to the person's awareness
that the premises is a drug-free zone, and (5) unlike other criminal statutes (such as carrying a
weapon in a liquor store), Article 481.134 does not require the State to post signs in all drug-free
zones warning drug dealers that the punishment ranges for their crimes will be raised by selling
illegal drugs on school property. 

 Fluellen's brief states, "Appellant's case presents this Honorable Court with the opportunity
to fully and carefully review the 'Drug Free Zone' law and how it was applied to appellant in this
particular case." (Emphasis added.) Fluellen is clearly arguing the statute is unconstitutional as
applied to him; he is not claiming the statute is unconstitutional on its face. This issue was not
preserved at trial. We therefore overrule this contention of error. See Tex. R. App. P. 33.1; Smith,
10 S.W.3d at 49.

10. Finality and Validity of Enhancement Conviction

 Fluellen also contends the State failed to prove that his prior conviction was final for the
purpose of enhancement. The State alleged Fluellen had previously been convicted of delivering
cocaine in cause number 92CR0173 in Galveston County. On the nunc pro tunc judgment entered
into evidence, there is a notation listing "notice of appeal," with a blank space to its right and a date
listed to the left. Fluellen contends this notation indicates Fluellen appealed that judgment, thereby
requiring the State to show the conviction was affirmed on appeal. The State contends that the
"notice of appeal" notation, because it is followed by an uncompleted blank, means Fluellen did not
appeal the 1992 conviction. The date listed to the left, according to the State, is the date Fluellen's
thumbprint was taken on the final judgment. 

 "After the State establishes that a defendant has been previously convicted, this Court will
presume that a conviction is final when faced with a silent record regarding such." Johnson v. State,
784 S.W.2d 413, 414 (Tex. Crim. App. 1990); see also Jones v. State, 77 S.W.3d 819, 822 (Tex.
Crim. App. 2002). 

 [W]hen the State offers into evidence a certified copy of a judgment and sentence,
it has made a prima facie case that the conviction reflected within that judgment and
sentence is a final conviction worthy of respect. That evidence is legally and
factually sufficient to prove that a prior conviction is a final conviction absent any
evidence to the contrary. If the judgment of conviction has been set aside, vacated
or appealed, the defendant must offer some evidence to support that fact. Once the
defendant offers that evidence, the State must prove, beyond a reasonable doubt, that
the conviction has been affirmed and the mandate has issued.


Jones, 77 S.W.3d at 822-23. 

 The State made a prima facie case that Fluellen had previously been convicted by offering
evidence of the prior judgment and connecting the judgment to Fluellen through expert fingerprint
testimony. The burden then shifted to Fluellen to offer "some evidence" the conviction had been
appealed. No such evidence was offered in this case. Neither the clerk's record nor the reporter's
record of this case shows Fluellen offered into evidence a written notice of appeal, an appellate
docketing statement, an opinion from a court of appeals reversing his conviction, or other such
evidence. It is not enough to argue Fluellen might have appealed the conviction; he must
affirmatively present evidence of such an appeal. See id. at 823-24. As such, Fluellen failed to meet
his burden of proof. The State was entitled to have the jury presume Fluellen had been convicted
based on the State's prima facie case.

 Nonetheless, the State concedes the judgment in 92CR0173 (used for enhancement) might
be void. On October 16, 1992, Fluellen pled guilty to the first-degree felony of delivery of a
controlled substance (cocaine). The trial court sentenced Fluellen to ten years' imprisonment, with
instructions that Fluellen be assigned to the Special Alternative to Incarceration Program (SAIP)
(boot camp). Texas Department of Criminal Justice-Institutional Division received Fluellen on
November 6, 1992, determined he was not a suitable candidate for SAIP, and returned him to the
trial court. The trial court then changed Fluellen's sentence to five years' imprisonment on December
18, 1992, and entered a nunc pro tunc judgment on December 21, 1992, to indicate this change of
sentence. 

 The statute providing for the release of an inmate from the SAIP envisions a very narrow
time period when the trial court may modify the sentence imposed. 

 After the expiration of 75 days but prior to the expiration of 90 days from the date on
which the convicted person is received into custody by the institutional division, the
judge of the court that imposed the sentence may suspend further execution of the
sentence imposed and place the person on community supervision under the terms
and conditions of this article, if in the opinion of the judge the person would not
benefit from further imprisonment.


Tex. Code Crim. Proc. Ann. art. 42.12, Â§ 8(a) (Vernon Supp. 2003). A trial court that acts outside
the fifteen-day window is without jurisdiction to do so, and the attempted resentencing is void. Ex
parte Bittikoffer, 802 S.W.2d 701, 702 (Tex. Crim. App. 1991) (en banc). 

 According to a notation on the December 21, 1992, judgment, the trial court originally
assessed a ten-year sentence on October 16, 1992, in the case used for enhancement. Less than
seventy-five days later, the trial court attempted to reduce Fluellen's sentence to five years--but it had
not yet acquired jurisdiction to effect such a change. See Tex. Code Crim. Proc. Ann. art. 42.12,
Â§ 8. Where a court acts but lacks jurisdiction, any judicial action is void. See Garza v. Tex.
Alcoholic Beverage Comm'n, 89 S.W.3d 1, 13-14 (Tex. 2002) (court's actions, done after court lost
jurisdiction, were void). 

 The Corpus Christi Court of Appeals reviewed a similar situation a few years ago. In Garza
v. State, 904 S.W.2d 877 (Tex. App.-Corpus Christi 1995), aff'd, 931 S.W.2d 560 (Tex. Crim. App.
1996) (en banc), a defendant was sentenced to ten years' imprisonment for aggravated sexual assault. 
The trial court purportedly granted a motion for new trial, but failed to enter a written order within
the seventy-five-day statutorily required time frame. Id., 904 S.W.2d at 878; see also Tex. R. App.
P. 21.8 (formerly Tex. R. App. P. 31(e)). The trial court nonetheless held a new trial, after which the
jury sentenced the defendant to forty years' incarceration. On appeal, the defendant claimed the trial
court's order granting a new trial was void for want of jurisdiction. The court of appeals agreed with
the defendant, reversed the second conviction, and held the first conviction and sentence were final. 
Garza, 904 S.W.2d at 879. (9)

 In the case at bar, the trial court acted without jurisdiction on December 21, 1992, when it
tried to reduce Fluellen's original sentence from ten years to five. That decision by the trial court is,
therefore, void. Additionally, following the reasoning of the Corpus Christi Court of Appeals'
decision in Garza, we find the first judgment was apparently lawfully entered while the trial court
did possess jurisdiction and could have served as a final conviction for the purpose of future
enhancement under Article 12.42 of the Texas Penal Code. See Tex. Pen. Code Ann. art. 12.42
(Vernon 2003).

 However, the enhancement paragraph in the indictment alleged Fluellen's conviction became
final on December 21, 1992. It appears the proper date of conviction was October 16, 1992. 
Generally, the State must prove its enhancement case as alleged in the charging instrument. Williams
v. State, 980 S.W.2d 222, 226 (Tex. App.-Houston [14th Dist.] 1998, pet. ref'd). "However, it is
well settled that the State need not allege enhancement counts in an indictment with the same degree
of specificity that the primary offense requires." Jingles v. State, 752 S.W.2d 126, 129 (Tex.
App.-Houston [14th Dist.] 1987, pet. ref'd) (citing Freda v. State, 704 S.W.2d 41, 42 (Tex. Crim.
App. 1986)). "The test is whether the accused has been misled to his prejudice." Jingles, 752
S.W.2d at 129 (citing Freda, 704 S.W.2d at 42). 

 In the case at bar, Fluellen entered a plea of "not true" to the enhancement allegation. The
enhancement paragraph alleged Fluellen was convicted "on the 21st day of December, A.D., 1992,
in cause number 92CR0173, in the 56th Judicial District Court of Galveston County, Texas . . . of
the felony offense of Delivery of a controlled substance, to wit: Cocaine, . . . ." The State introduced
the December 21, 1992, judgment, which on its face stated the defendant was originally sentenced
on October 16, 1992, in cause number 92CR0173 in the 56th Judicial District Court of Galveston
County, Texas, for the offense of delivery of cocaine. 

 The State, in its brief, asks us to affirm the trial court's sentence by relying on the first
judgment of conviction dated October 16, 1992, as evidence of Fluellen's prior conviction. That
judgment, however, was not offered into evidence at trial and is not in the record on appeal. Because
the December judgment was void and because the State failed to introduce the October judgment
into evidence, the evidence is insufficient to support the trial court's finding that Fluellen had been
previously convicted in either December or October 1992, of delivery of cocaine. Accordingly, the
trial court was not authorized to assess punishment within the range provided for a second-degree
felony. We reverse the trial court's sentence and remand for a new trial on punishment.

 We affirm Fluellen's conviction, but reverse the judgment as to the punishment and remand
the case to the trial court for a new trial on punishment.




 Jack Carter

 Justice

 



CONCURRING OPINION



 The majority aligns itself with those sister courts holding it is not error to give part of the
Geesa (10) instruction on reasonable doubt in the absence of an agreement. I agree with the Waco
Court of Appeals that the directive in Paulson (11) was clear: "give it all [the Geesa instruction] if the
parties agree or give none of it." Phillips v. State, 72 S.W.3d 719, 721 (Tex. App.-Waco 2002, no
pet.). A standard instruction to the jury in all criminal cases is that "no person may be convicted of
an offense unless each element of the offense is proved beyond a reasonable doubt." Tex. Code
Crim. Proc. Ann. art. 38.03 (Vernon Supp. 2003). Paulson quoted with approval an earlier Texas
Court of Criminal Appeals decision that the language of this statute needs no amplification. Paulson
v. State, 28 S.W.3d 570, 571 (Tex. Crim. App. 2000). Having given the statutory instruction on
reasonable doubt in the instant case, the additional selected Geesa instruction was an unwarranted
amplification. 

 For these reasons, I would hold it was error for the trial court to give the selected Geesa
instruction. However, considering the entire jury charge and the state of the evidence, I do not feel
Fluellen suffered egregious harm from this error. I therefore concur in the result. 





 Donald R. Ross

 Justice



Date Submitted: February 19, 2003

Date Decided: March 25, 2003


Publish
1. Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991).
2. Batson v. Kentucky, 476 U.S. 79 (1986).
3. Tex. R. Evid. 901 states: 


 (a) . . . The requirement of authentication or identification as a condition
precedent to admissibility is satisfied by evidence sufficient to support a finding that
the matter in question is what its proponent claims. 


 (b) . . . examples of authentication or identification conforming with the
requirements of this rule:

 . . . .


 (5) Voice identification. Identification of a voice, whether heard firsthand or
through mechanical or electronic transmission or recording, by opinion based upon
hearing the voice at anytime under circumstances connecting it with the alleged
speaker. 
4. See Kephart v. State, 875 S.W.2d 319 (Tex. Crim. App. 1994).
5. Geesa, 820 S.W.2d at 154.
6. See Tex. Health & Safety Code Ann. Â§ 481.134(d)(1) (Vernon Supp. 2003).
7. The argument under this point is that the term "premises" is used in a different statute and
that the State simply used the wrong statutory definition. Section 484.134(a)(4), however, defines
"premises" as meaning "real property and all buildings and appurtenances pertaining to the real
property." That would seem to dispose of the matter if it were necessary to reach it. Tex. Health
& Safety Code Ann. Â§ 484.134(a)(4) (Vernon Supp. 2003). 
8. See generally Love v. City of Dallas, 120 Tex. 351, 40 S.W.2d 20, 29 (1931); Bell v. Katy
Indep. Sch. Dist., 994 S.W.2d 862, 863 (Tex. App.-Houston [1st Dist.] 1999, no pet.); Save Our
Springs Alliance, Inc. v. Austin Indep. Sch. Dist., 973 S.W.2d 378 (Tex. App.-Austin 1998, no pet.);
West Orange-Cove Consol. Indep. Sch. Dist. v. Smith, 928 S.W.2d 773, 774 (Tex. App.-Beaumont
1996, no writ) (holding that rights associated with property acquired by school districts and cities
protected by same constitutional guaranties that shield property of individuals).
9. The Corpus Christi court also held that a notation on a docket sheet that a new trial was
granted was insufficient; the court of appeals held that a trial court must, under the rules, enter a
written order separate from its docket entry, and must do so within seventy-five days of the
judgment, to effect a new trial.
10. Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991).
11. Paulson v. State, 28 S.W.3d 570 (Tex. Crim. App. 2000).